UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RAVEN JONES,

    *Plaintiff*,

v.

WTS INTERNATIONAL, LLC,

    *Defendant*.

No. 1:25-cv-02104-MAU

## MEMORANDUM OPINION

Plaintiff Raven Jones ("Jones"), proceeding pro se, has filed this suit against her former employer, Defendant WTS International, LLC ("WTS"), for pregnancy discrimination. ECF No. 1-2.[1] Jones seeks relief under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101 *et seq.*, the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. §2000e(k), the Pregnant Workers Fairness Act ("PWFA"), 42 U.S.C. §2000gg *et seq.*, and several D.C. common-law claims. ECF No. 1-2 at 1–4. WTS moves under Federal Rule of Civil Procedure 12(b)(6) to dismiss Jones's common-law claims. ECF No. 6. For the reasons set forth below, the Court **GRANTS IN PART** and **DENIES IN PART** WTS's Motion.

## FACTUAL BACKGROUND

Jones alleges[2] that WTS hired her in June 2022 as a massage therapist at the Waldorf Astoria Spa. ECF No. 1-2 at 3. On February 8, 2023, Jones discovered she was pregnant. ECF No. 1-2 at 3. The next day, Jones told her supervisor Melvin Carr that she was pregnant and asked him to adjust her work schedule because she was experiencing pregnancy-related health issues.

---

[1]     Citations are to the page numbers in the ECF headers.
[2]     For purposes of this Memorandum Opinion, the Court accepts all well-pleaded allegations as true.

1

ECF No. 1-2 at 3.  Before her pregnancy, Jones worked Wednesdays and Thursdays from 10:00 a.m. to 6:00 p.m., Fridays to Sundays from 10:00 a.m. to 8:00 p.m., and every other Tuesday from 10:00 a.m. to 6:00 p.m.  ECF No. 1-2 at 3.  Jones asked Carr to change her Friday to Sunday schedule so that she could leave work at 6:00 p.m.  ECF No. 1-2 at 3.  Jones alleges that Carr told her that "he would help [her] out and 'blocked out' 6pm and 7pm appointment slots."  ECF No. 1-2 at 3.

Jones claims Carr did not change her schedule and that Carr continued to schedule appointments for her after 6:00 p.m.  ECF No. 1-2 at 3.  On Friday, February 17, 2023, Jones met with Carr and Jessica Rose, the spa director, to discuss Jones's schedule.  ECF No. 1-2 at 3.  Jones alleges that she told Carr and Rose that she needed breaks in her schedule because of her pregnancy and other health issues.  ECF No. 1-2 at 3–4.  Jones also told Carr and Rose "about possible doctor's visits that would be coming up" and offered to step down as the lead massage therapist.  ECF No. 1-2 at 4.

According to Jones, WTS made no scheduling changes to accommodate her.  ECF No. 1-2 at 4.  Jones "was suffering health wise" but "performed [her] job satisfactorily."  ECF No. 1-2 at 4.  Carr scheduled Jones to massage clients during the 6:00 p.m. time slot on Sunday, February 19, 2023.  ECF No. 1-2 at 4.  Jones again raised concerns to Carr about having no breaks and working past 6:00 p.m.  ECF No. 1-2 at 4.  On the morning of February 19, Jones told Carr that she was sick and could not work.  ECF No. 1-2 at 4.  Jones claims Carr told her to "take the day off to recover."  ECF No. 1-2 at 4.

The following week, Rose allegedly told Jones that Jones was not scheduled to work even though Jones had planned on working her regular schedule.  ECF No. 1-2 at 4.  Rose asked Jones to "bring her a doctor's note," so Jones emailed Carr a doctor's note on February 23, 2023.  ECF

2

No. 1-2 at 4.  The next day, Jones was sick and claims the doctor told her to stay home.  ECF No. 1-2 at 4.  Jones told Rose that she could not come into work.  ECF No. 1-2 at 4.  On February 25, 2023, Jones "received a phone call that [she] was terminated."  ECF No. 1-2 at 4.

A few weeks later, Jones filed a charge of discrimination with the D.C. Office of Human Rights, alleging WTS violated the ADA, PDA, and PWFA.  ECF No. 1-2 at 4.  The Equal Employment Opportunity Commission issued Jones a right-to-sue letter on February 28, 2025.  ECF No. 1-2 at 5–6.  Three months later, Jones filed a pro se Complaint in the Superior Court of the District of Columbia, raising three causes of action: slander, breach of trust, and discrimination based on pregnancy.  ECF No. 1-2 at 1–2.  On the Information Sheet attached to the Complaint, Jones also checked that she was bringing claims for breach of contract and wrongful termination.  ECF No. 1-3 at 1.

WTS removed the case to this Court based on federal question jurisdiction.  ECF No. 1 at 1–5; *see* 28 U.S.C. §§1331, 1441(a).  WTS moves under Rule 12(b)(6) to dismiss Jones's claims of slander, breach of trust, breach of contract, and wrongful termination.  ECF No. 6.  WTS does not seek to dismiss Jones's claim for pregnancy discrimination.

## ANALYSIS

### I. Rule 12(b)(6) Standard

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation modified).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The Court must construe all well-

pleaded allegations "in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (citation modified).

But "where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citation modified). To that end, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation modified). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (citation modified). Indeed, "factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation modified). To nudge a claim "across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570, the plaintiff must allege "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678.

The Court liberally construes a pro se complaint and holds it "to less stringent standards than formal pleadings drafted by lawyers." *Id.* The Court "consider[s] a pro se litigant's complaint in light of all filings, including filings responsive to a motion to dismiss." *Id.* (citation modified); *see also Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007) (permitting "courts to consider supplemental material filed by a pro se litigant in order to clarify the precise claims being urged"). That said, liberal construction does not provide a pro se plaintiff with "a license to ignore the Federal Rules of Civil Procedure." *Oviedo v. Washington Metro. Area Transit Auth.*, 948 F.3d 386, 397 (D.C. Cir. 2020) (citation modified). Regardless of a party's pro se status, however, in "determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take

4

judicial notice." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006). For these reasons, the Court considers Jones's Charge of Discrimination and other documents attached to her Complaint.

**II.     Jones's Fails to State a Claim for Slander.**

Slander "consists of the publication of defamatory matter by spoken words, transitory gestures or by any form of communication other than" "written or printed words." RESTATEMENT (SECOND) OF TORTS §568 (1977); *see Hosey v. Jacobik*, 966 F. Supp. 12, 15 n.2 (D.D.C. 1997) ("Defamation is simply a broader term for slander and libel." (citation modified)). To raise a claim for slander, a Plaintiff must allege that (1) "the defendant made a false and defamatory statement concerning the plaintiff"; (2) "the defendant published the statement without privilege to a third party"; (3) "the defendant's fault in publishing the statement met the requisite standard"; and (4) "either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Competitive Enter. Inst. v. Mann*, 150 A.3d 1213, 1240 (D.C. 2016) (citation modified); *see also Crowley v. N. Am. Telecomms. Ass'n*, 691 A.2d 1169, 1172–73 n.2 (D.C. 1997); 1 Civil Jury Instructions for DC §17.01 (2025).

Jones alleges that she "was wrongfully terminated based on unsubstantiated allegations made by a colleague." ECF No. 1-2 at 1. In a document attached to the Complaint, Jones claims "an employee of [WTS] made knowingly false and defamatory statements about [Jones] to management." ECF No. 1-2 at 11–12. In Jones's view, the statements were "false assertions regarding [her] character, professionalism, and work ethic." ECF No. 1-2 at 12. Jones's Response Brief suggests that another massage therapist filed an internal complaint against Jones containing allegedly defamatory statements. ECF No. 10 at 5–7.

Even construing these allegations liberally, Jones fails to state a claim against WTS for slander. First, other than broad and conclusory allegations, Jones fails to allege the content or context of the actual slanderous statement. *Cf. Crowley*, 691 A.2d at 1172 (holding the plaintiff's slander claim survived a motion to dismiss in part because the complaint "contain[ed] the substance of the alleged defamatory statement"); *Watwood v. Credit Bureau*, 68 A.2d 905, 906 (D.C. 1949) (dismissing the plaintiff's libel claim because "neither the language [of the alleged defamatory statement] nor its substance was set forth" in the complaint). Moreover, Jones alleges that the statement was made not by WTS but by an unnamed coworker. See ECF No. 1-2 at 1. Accordingly, there is no allegation, let alone a plausible one, to state a claim that WTS is vicariously liable for the allegedly slanderous statements. *See Trump v. Carroll*, 292 A.3d 220, 228–29, 233–34 (D.C. 2023) (en banc), *answering certified question from*, *Carroll v. Trump*, 49 F.4th 759 (2d Cir. 2022) (adopting the Restatement (Second) of Agency §228 (1958)) (explaining an employee acts within the scope of employment when the employee was "actuated by a purpose to serve the [employer]").

Nonetheless, even if Jones had alleged that WTS is vicariously liable for the coworker's statements, her allegations—"knowingly false and defamatory statements," "false assertions," and "unsubstantiated allegations"—are nothing more than naked assertions devoid of factual support. Because Jones's allegations are threadbare conclusions, she fails to nudge her claim across the line from conceivable to plausible.[3] Accordingly, the Court dismisses Jones's claim for slander.

---

[3] Although Defendant has not raised the argument, the statute of limitations appears to bar Jones's claim of slander. *See* D.C. Code § 12-301(a)(4) (setting one-year limitations period for slander claims); *Castagna v. Luceno*, 744 F.3d 254, 258 (2d Cir. 2014) (holding that "filing an EEOC charge does not toll the time for filing state tort claims, including those that arise out of the same nucleus of facts alleged in the charge of discrimination filed with the EEOC"); *Juarez v. Ameritech Mobile Commc'ns, Inc.*, 957 F.2d 317, 323 (7th Cir. 1992) (same); *cf. Johnson v. Ry.*

### III.     Jones Fails to State a Claim for Breach of Contract.[4]

"Under District of Columbia law, a party asserting breach of contract must prove four elements: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *CorpCar Servs. Houston, Ltd. v. Carey Licensing, Inc.*, 325 A.3d 1235, 1244–45 (D.C. 2024) (citation modified).  A valid contract requires the parties' "agreement as to all material terms, and [ ] intention of the parties to be bound." *Kramer Assocs., Inc. v. Ikam, Ltd.*, 888 A.2d 247, 251 (D.C. 2005) (citation modified). Though "an implied contract may arise from the language of an employee handbook or manual, . . . an employer . . . may effectively disclaim any implied contracts." *Smith v. Union Lab. Life Ins. Co.*, 620 A.2d 265, 269 (D.C. 1993) (citation modified).  To effectively disclaim an implied contract, the employee handbook must state that the handbook is not a contract and "contain language clearly reserving the employer's right to terminate at will." *Boulton v. Inst. of Int'l Educ.*, 808 A.2d 499, 505 (D.C. 2002) (citation modified).

Jones claims that her "termination followed without a full, fair, or impartial investigation into the claim." ECF No. 1-2 at 1.  Jones alleges that WTS "knowingly and willfully breached the trust inherent in the employment relationship by accessing the scheduling system and removing the blocks placed on [her] calendar." ECF No. 1-2 at 11.  She also alleges that WTS "permitted

---

*Express Agency, Inc.*, 421 U.S. 454, 465–66 (1975) (holding that filing a charge of discrimination with the EEOC does not toll the statute of limitations for suits under 42 U.S.C. §1981).

[4]     Although Jones refers to a claim for "breach of trust," she appears to refer to that claim synonymously with her breach of contract claim. *See* ECF No. 10 at 2 ("Defendant knowingly and willfully breached the trust/contract . . . ."). WTS construes Jones's breach of trust claim as a claim for breach of confidence. ECF No. 6 at 5.  If Jones seeks relief under a breach of confidence claim, she fails to plausibly state that claim. *See, e.g.*, *Jeffries v. Volume Servs. Am., Inc.*, 928 F.3d 1059, 1064 (D.C. Cir. 2019) ("A common law breach of confidence lies where a person offers private information to a third party in confidence and the third party reveals that information" to another." (citation modified)); Restatement (Second) of Torts §652A (listing general principles for the tort of invasion of privacy).

7

third parties to schedule [her] beyond the doctor-recommended limits."  ECF No. 1-2 at 11.  Finally, Jones argues that the employee handbook is a contract and that WTS violated the handbook by not following the investigative procedures outlined there.  ECF No. 10 at 3.

Here, the employee handbook sets forth that it does not "confer any contractual rights whatsoever," that it should not be considered a "contract of employment, express or implied," and that WTS "adheres to the policy of employment at will."  ECF No. 1-2 at 17.  Jones pleads no facts that an implied contract existed or that the handbook's disclaimer was ineffective.  Without such facts, Jones fails to allege the existence of a valid contract.  *See Curne v. U.S. Small Bus. Admin.*, No. 23-cv-3789, 2024 WL 5056355 *13 (D.D.C. Dec. 10, 2024) (applying D.C. common law to dismiss breach of contract claim because plaintiff failed to allege the existence of a contact between the parties).  Even if she had, she fails to allege the duty that WTS owed her and how WTS breached that duty.  Accordingly, the Court dismisses Jones's claim for breach of contract.

### IV.   The Court does not Construe Jones's Complaint as Raising a Claim for Wrongful Termination in Violation of Public Policy.

WTS construes Jones's Complaint as raising a wrongful termination in violation of public policy claim.  *See* ECF No. 6-1 at 8.  Jones alleges that she is "filing suit for . . . discrimination of pregnancy," and her charge of discrimination raises ADA, PDA, and PWFA claims.  *See* ECF No. 1-2 at 1–4.  In her Response Brief, Jones suggests that her wrongful termination claim refers her to claims under federal law.  *See* ECF No. 10 at 9 ("Were it not for the Slander which led to the Breach of Contract by Management that then led to the Discrimination, Plaintiff would not have filed a Wrongful termination suit"); *id.* ("Being an At-Will Employer does not shield those employers from liability when Federal laws . . . have been violated").  At this stage, Jones does not appear to raise a distinct common-law claim for wrongful termination in violation of public policy.  Thus, the Court need not consider whether Jones plead a claim to relief for that claim.

8

## CONCLUSION

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** WTS's Motion. The Court **DISMISSES WITHOUT PREJUDICE** Jones's claims for slander and breach of contract. The Court will issue a separate Order.

_____
MOXILA A. UPADHYAYA
UNITED STATES MAGISTRATE JUDGE

Date: November 3, 2025